

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CERTA PROPAINTERS, LTD.<br>150 Green Tree Road, Suite 1003<br>Oaks, Pennsylvania 19456<br><br>Plaintiff,<br><br>v.<br><br>RALPH E. ROSSI, individually,<br>ARCADIAN PAINTING, and PRATT<br>& D'ANGELO PAINTING, INC.<br>83 Old Well Road<br>Purchase, New York 10577<br><br>Defendants. | CIVIL ACTION<br><br>Case No. 04-cv-4950 |

## COMPLAINT

### PARTIES

1.  Plaintiff, Certa ProPainters, Ltd. ("Plaintiff" or "Certa Pro") is a Massachusetts corporation with its principal place of business located at 150 Green Tree Road, Suite 1003, Montgomery County, Oaks, Pennsylvania 19456.

2.  At all times referred to herein, Certa Pro has engaged in business as the national franchisor of Certa ProPainting franchises, which offer painting, decorating and related services to certain customers. There are currently 180 Certa Pro franchisees operating in 43 states.

3.  Defendant, Ralph E. Rossi ("Rossi") is an individual, resident and citizen of New York with an address of 83 Old Well Road, Purchase, New York 10577.

4. Defendant, Arcadian Painting ("Arcadian") is, through information and belief, a New York corporation with an address of 83 Old Well Road, Purchase, New York 10577.

5. Defendant, Pratt & D'Angleo Painting, Inc. ("Pratt") is a New York corporation with a registered address of 83 Old Well Road, Purchase, New York 10577 and a principal place of business at 270 Park Avenue, Harrison, New York 10528.

6. Upon information and belief, Rossi is the sole shareholder of Arcadian and of Pratt and controls their operations, (Rossi, Arcadian and Pratt are hereinafter collectively referred to as "Defendants").

## JURISDICTION AND VENUE

7. This Court also has jurisdiction over the parties and subject matter in this civil action pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Venue for this action is predicated upon 28 U.S.C. §1391(b) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## BACKGROUND

### The Franchise Agreement

9. Certa Pro franchisees are licensed to use Certa Pro's proprietary marks to operate under Certa Pro's business system pursuant to the terms and conditions of the Certa Pro franchise agreement entered into between each franchisee.

10. Certa Pro's franchisees are also licensed to use Certa Pro's proprietary business policies, procedures, standards, ad specifications for operations, all of which are disclosed to Certa Pro franchisees in confidence.

11. Under each franchise agreement, Certa Pro franchisees are required to pay Certa Pro an initial franchise fee and an ongoing royalty fee and a national advertising fund fee.

12. On or about June 24, 1997, Certa Pro and Arcadian entered into a franchise agreement, pursuant to which Arcadian obtained the right to and undertook the obligation to operate a Certa Pro franchise for a term of ten (10) years (the "Franchise Agreement"). A true and correct copy of the Franchise Agreement is attached as Exhibit "A." Sometimes hereinafter, Certa Pro is referred to as "Franchisor" and Arcadian is referred to as "Franchisee."

13. Rossi, through information and belief, is the President of Arcadian.

14. In order to induce Certa Pro to enter into the Franchise Agreement, Rossi executed a personal guaranty, contemporaneously with the execution of the Franchise Agreement, in which Rossi guaranteed the performance of Arcadian's obligations under the Franchise Agreement (the "Guaranty"). A true and correct copy of the Guaranty is attached as Exhibit "B."

15. The Franchise Agreement authorized Arcadian to market and sell residential painting services under Certa Pro's proprietary marks in an exclusive territory identified in Schedule "A" to the Franchise Agreement as Rye/Larchmont, New York, encompassing the following zip codes: 10543, 10538, 10528, 10580, 10573, 10574, 10804.

16. Subsequently, Certa Pro provided Rossi with a training program, opening assistance, continuing advisory assistance, and Certa Pro's confidential operating manual.

17. Pursuant to Article 10.1.3 (i) of the Franchise Agreement and in consideration of the initial and ongoing benefits received by Arcadian as a Certa Pro franchisee, Arcadian and Rossi agreed to a non-compete agreement. Pursuant to the terms of the non-compete agreement, they agreed that for the term of the Franchise Agreement and for three (3) years thereafter, they would not "have any interest in, or involvement in the operation of any business, whether for compensation or not, in any capacity whatsoever, which is directly or indirectly, in competition with the businesses now or at any time during the term of this Agreement being conducted by Franchisor or its affiliates which business is located within a radius of ten (10) miles of the Territory or within a radius of five (5) miles of any Certa Pro Franchised Business." (the "Non-Compete Agreement"). See Article 10.1.3 (i) of the Franchise Agreement attached as Exhibit "A."

18. Pursuant to Article 10.1.3 (ii) of the Franchise Agreement, Arcadian and Rossi also agreed that during the term of the Franchise Agreement and for three (3) years thereafter they would not directly or indirectly "solicit or accept business from Franchisor's customers, vendors or other business relations which Franchisee has had any contact with as a result of its operating the Franchised Business prior to and as of the date of termination of this Agreement." Furthermore, under Article 10.1.3 (iv), they agreed that for the same time period, they would not "endeavor to entice away from Franchisor (or its affiliates) any customer, vendor or other business relation or otherwise interfere

with the relationship between such person or entity and Franchisor (or its affiliates)." See Article 10.1.3 (ii) and (iii) of the Franchise Agreement attached as Exhibit "A."

19. Pursuant to Article 12.2.1 of the Franchise Agreement, Arcadian and Rossi were required to furnish Certa Pro such reports as Certa Pro required, which included weekly reports of gross sales, quarterly reports of gross sales, profit and loss statements, and year-end financial statements. See Article 12.2.1 of the Franchise Agreement attached as Exhibit "A."

20. Pursuant to Article 2.2 of the Franchise Agreement, Arcadian and Rossi were required to pay Certa Pro a non-refundable fixed annual royalty fee in equal monthly installments on or before the fifth (5th) day of each month during the term of the Franchise Agreement.

21. Pursuant to Article 11.2 of the Franchise Agreement, Arcadian and Rossi were also required to contribute to Certa Pro's national advertising fund an amount set by Certa Pro each month for the term of the Franchise Agreement.

22. Pursuant to Article 12.3 of the Franchise Agreement, Franchisor and its representatives were allowed, with three (3) days notice to Franchisee, to inspect or audit, or cause to be inspected or audited, the financial books, records, bookkeeping and accounting records, documents or other materials in respect of Arcadian's franchised business, and examine and make copies of all accounting and business records and procedures. See Article 12.3 of the Franchise Agreement attached as Exhibit "A."

Addendum to Franchise Agreement

23. On or about January 7, 1999, Arcadian and Certa Pro entered into an Addendum to the Franchise Agreement (the "Addendum"). A true and correct copy of the Addendum is attached as Exhibit "C."

24. Pursuant to the terms of the Addendum, the territory initially defined in Schedule "A" of the Franchise Agreement was amended to be newly described as Scarsdale_Rossi, New York, encompassing the following zip codes: 10583, 10543, 10538, 10528, 10580, 10573 and 10577.

25 Rossi signed the Addendum as President of Arcadian.

26 Pursuant to the terms of the Addendum, "all of the remaining terms and conditions of the [Franchise] Agreement shall remain in full force and effect."

Franchisee's Right to Terminate under the Franchise Agreement

27 Pursuant to Article 16.2 of the Franchise Agreement, Franchisee had the right to terminate the Franchise Agreement at any time upon two hundred seventy (270) days notice (the "Notice Period"), provided that Franchisee continued "to operate the business during the Notice Period and make all payments for royalties and other fees to Certa Pro or in lieu of operating the business during the Notice Period, make a lump sum payment to Certa Pro equal to nine (9) months of royalty payments" and "comply with the provisions set forth in section 16.3" of the Franchise Agreement. See Article 16.2 of the Franchise Agreement attached as Exhibit "A."

28 Pursuant to Article 16.3 of the Franchise Agreement, the Franchisee agreed to: cease using Certa Pro's proprietary marks; return all copies of Certa Pro's operations manual; assign all telephone numbers used in connection with the franchised

business; fulfill all obligations to customers under all outstanding contracts and any warranties; and post a bond in an amount equal to two percent (2%) of the gross sales of the franchised business for the last two (2) years.

29.  Pursuant to Article 16.2 of the Franchise Agreement, termination of the Franchise Agreement does not relieve Arcadian or Rossi of their obligations under Articles 7, 8, 9 and 10 of the Franchise Agreement. Specifically, these obligations include, but are not limited to, Article 10.1.3 of the Franchise Agreement, which, upon termination of the Franchise Agreement and for three (3) years thereafter, prohibits Arcadian and Rossi from operating or having any interest in a competing business within ten (10) miles of the Territory or five (5) miles of any other Certa Pro franchisee. (the "Post-Term Non-Compete Agreement"). See Article 16.2 of the Franchise Agreement attached as Exhibit "A."

Defendants' Breach of the Franchise Agreement

30.  On or about May 9, 2003, Rossi sent correspondence to Certa Pro expressing the intention to terminate the Franchise Agreement dated June 24, 1997. A true and correct copy of the correspondence dated May 9, 2003 is attached as Exhibit "D."

31.  On or about December 31, 2003, Fisher Zucker, LLC attorneys for Certa Pro, ("Fisher Zucker") sent correspondence to Rossi giving him notice of Certa Pro's intention to conduct an audit of his business, pursuant to Article 12.3 of the Franchise Agreement, and reminding him of the post-termination obligations under the Franchise Agreement. A true and correct copy of the correspondence dated December 31, 2003 is attached as Exhibit "E."

32. Despite the fact that Arcadian and Rossi were required to submit to an audit of the business under Article 12.3 of the Franchise Agreement, Arcadian and Rossi refused to allow Certa Pro to conduct an audit of the business.

33. On or about January 30, 2004, Fisher Zucker sent correspondence to Rossi's counsel, Mario DeMarco, ("DeMarco") informing him of Arcadian and Rossi's refusal to submit to the audit and notifying DeMarco of the fact that Arcadian and Rossi were at least four (4) months behind in royalty and other payments due to Certa Pro under the terms of the Franchise Agreement. A true and correct copy of the correspondence dated January 30, 2004 is attached as Exhibit "F."

34. On or about February 10, 2004, DeMarco sent correspondence to Fisher Zucker notifying counsel that Rossi "intends to comply with the terms of any agreement and pay and franchise fees alleged to be owed" and "intends to comply with any post-termination obligation." A true and correct copy of the correspondence dated February 10, 2004 is attached as Exhibit "G."

35. Despite Arcadian and Rossi's obligations to comply with Certa Pro's requests to conduct an audit of the business, Arcadian and Rossi have continued to refuse to allow Certa Pro to conduct said audit and various franchise fees totaling at least Ten Thousand Sixty-Nine Dollars and Ninety-Eight Cents ($10,069.98) are still due and owing to Certa Pro from the Notice Period.

36. In addition, just prior to the purported termination date, on or about January 21, 2003, Arcadian and/or Rossi formed a New York corporation, Pratt & D'Angelo Painting, Inc. with a registered address of 83 Old Well Road, Purchase, New

York 10577 and a principal place of business at 270 and/ or 281 Park Avenue, Harrison, New York 10528

37. Accordingly, rather than comply with the post-term obligations set forth in the Franchise Agreement, Rossi and Arcadian: (i) continued to operate the franchised business through a newly formed corporation, Pratt; (ii) failed to post the Bond required under paragraph 16.3.8 of the Franchise Agreement; (iii) failed to return all copies of Certa Pro's operations manual; (iv) failed to assign all telephone numbers used in connection with the franchised business; and (iv) failed to comply with the non-compete provisions in paragraph 10.1.3.

38. Rossi and Arcadian's failure to satisfy the conditions set forth in paragraphs 16.2 and 16.3 render their attempted termination of the Franchise Agreement ineffective, and they remain bound by all terms and conditions set forth in the Franchise Agreement.

The Certa Pro Investigation

39. On or about August 9, 2004, Certa Pro, through Fisher Zucker, retained the services of North American Investigations ("North American") to conduct surveillance on Rossi and Pratt.

40. On or about August 23, 2004, North American conducted surveillance on Rossi and Pratt. A true and correct copy of North American's surveillance report is attached as Exhibit "H."

41. North American reported that Rossi went to 281 Park Avenue, Harrison, New York where two white work vans were parked. One van, a 2004 GMC registered to

Pratt at 281 Park Avenue, Harrison, New York, had a sign on it with the name "Pratt and D'Angelo." See surveillance report attached as Exhibit "H."

42. North American reported that numerous workers and work vans were observed picking up and dropping off men at 270 and 281 Park Avenue. See surveillance report attached as Exhibit "H."

43. Workers were seen leaving the area with a manila folder. See surveillance report attached as Exhibit "H."

44. One work van was followed to 16 Colonial Road where workers proceeded to paint an inside door at the residence. See surveillance report attached as Exhibit "H."

45. On or about September 21, 2004, Certa Pro, through Fisher Zucker, had North American conduct another surveillance of Rossi and Pratt. A true and correct copy of the surveillance report dated September 21, 2004 is attached as Exhibit "I."

46. During this surveillance, North American reported the following: an additional vehicle parked at 270 Park Avenue, registered to Pratt; coffee being delivered to various workers at 270 Park Avenue; employees exiting vehicles bearing the name "Pratt and D'Angelo;" employees removing a large ladder from the roof of a Pratt vehicle and beginning work on a two-story Tudor-style residence; Pratt vehicles going to Harrison Paint Supply and a paint warehouse for paint and supplies; employees completing painting services at Park Drive South, where a sign was located on the corner of the property advertising "Pratt & D'Angelo" as providing the painting services; and employees in "Pratt & D'Angelo" t-shirts doing work at the Harrison Fire Department. See surveillance report attached as Exhibit "I."

The Continuing Harm

47. Despite Pratt and Rossi's purported termination of the Franchise Agreement, Arcadian and Rossi continue to operate the business, under the name Pratt & D'Angelo, in contravention of Certa Pro's rights under the Franchise Agreement.

48. It is believed and alleged that Defendants continue to make use of Certa Pro's confidential information, including the proprietary operations manual, in the operation of the Business.

49. Despite demands by Certa Pro that Arcadian and Rossi submit to an audit, Defendants have refused and failed, and continue to refuse and fail to submit to an audit as required by the terms of the Franchise Agreement.

50. As a result of Defendants' abandonment of the Certa Pro franchised business, Defendants Arcadian and Rossi owe royalties and other monies to Certa Pro for the balance of the Franchise Agreement totaling Seventy Nine Thousand Three Hundred Eighty Six Dollars and Fifty One Cents ($79,386.51) as follows: Sixty Seven Thousand One Hundred Sixty Six Dollars and Fifty One Cents ($67,166.51) in royalty fees and Twelve Thousand Two Hundred Twenty Dollars and Zero Cents ($12,220.00) in answering service fees, server fees and other dues.

51. As a result of Defendants' operation of the Business, Plaintiff is unable to sell a Certa Pro franchised business to a new franchisee in the areas defined as the Rye/Larchmont or as the Scarsdale_Rossi territories.

52. As a result of being unable to sell a Certa Pro franchised business to a new franchisee in these areas, Plaintiff has anticipated lost profits in the amounts of Forty Thousand Dollars and Zero Cents ($40,000.00) for an initial franchise fee and One

Hundred Eighty Thousand Dollars and Zero Cents ($180,000.00) in minimum royalty fees during the ten (10) year term of Certa Pro's current form of franchise agreement.

## COUNT I – INJUNCTION TO ENJOIN THE OPERATION OF THE COMPETING BUSINESS

53. Plaintiff incorporates by reference the averments set forth in paragraphs 1-51 above as though set forth at length herein.

54. After the purported termination date, Arcadian and Rossi began to operate the business through a different corporation, Pratt, using Certa Pro's confidential information and business system.

55. Pratt is engaged in the business of painting, decorating and related services in the territory defined in the Franchise Agreement.

56. Pursuant to Article 10.1.3 (i) of the Franchise Agreement, Defendants agreed that, for the term of the Franchise Agreement and three (3) years thereafter, they would not have any other interest in, or involvement in the operation of any business whether for compensation or not, in any capacity whatsoever, which is directly or indirectly, in competition with the business now, or at any time during the term of the Franchise Agreement, being conducted by Certa Pro or its affiliates, which business is located within ten (10) miles of the Territory or within a five (5) mile radius of any Certa Pro franchised business.

57. Through the operation of Pratt, Defendants are in violation of the non-compete as Arcadian and Rossi are competing directly with the franchised business.

58. Rossi and Arcadian's failure to satisfy the conditions set forth in paragraphs 16.2 and 16.3 render their attempted termination of the Franchise Agreement

ineffective, and they remain bound by all terms and conditions set forth in the Franchise Agreement.

59. As an in-term competing business, Pratt must operate as a Certa Pro franchise and pay the royalties due under the Franchise Agreement.

60. The acts, practices and conduct of the Defendants in operating the business through Pratt constitute a material breach of the Franchise Agreement and Guaranty and constitute a misuse of Certa Pro's confidential information and business system.

61. Certa Pro has been and will continue to be irreparably harmed by the operation of a competing business in its franchised territory by Defendants.

**WHEREFORE**, Plaintiff, Certa ProPainters, Ltd., demands that the Defendants be preliminarily and permanently enjoined and restrained from directly or indirectly operating a competing business in violation of the Franchise Agreement and the Guaranty.

### COUNT II - IN THE ALTERNATIVE - INJUNCTION TO ENJOIN OPERATION OF PRATT UNDER POST-TERM PROVISIONS OF THE FRANCHISE AGREEMENT

62. Plaintiff incorporates by reference the averments set forth in paragraphs 1 through 61 above as though set forth at length herein.

63. Despite the Defendants purported termination of the Franchise Agreement, even if they had terminated properly, the Defendants failed to comply with the post-term obligations set forth in the Franchise Agreement in that they: (i) continued to operate the franchised business through a newly formed corporation, Pratt; (ii) failed to post the Bond required under paragraph 16.3.8 of the Franchise Agreement; (iii) failed to return

all copies of Certa Pro's operations manual; (iv) failed to assign all telephone numbers used in connection with the franchised business; and (iv) failed to comply with the non-compete provisions in paragraph 10.1.3.

64. Upon information and belief, after the purported termination date, Arcadian and Rossi continue to offer painting services in the territory through Pratt, which is engaged in the business of painting, decorating and related services in violation of the terms of the Franchise Agreement.

65. Pursuant to Article 10.1.3 of the Franchise Agreement, upon termination of the Franchise Agreement, Arcadian and Pratt are prohibited, for a period of three (3) years, from operating or having any interest in a competing business within ten (10) miles of the Territory or five (5) miles of any other Certa Pro franchisee and from directly or indirectly, soliciting or accepting business from Certa Pro's customers, vendors or other business relations which Defendants have had any contact with as a result of operating the business prior to the date of termination of the Franchise Agreement, or otherwise interfere with the relationship between such person or entity and Certa Pro.

66. Defendants' operation of Pratt is in direct violation of the post-term non-compete agreement.

**WHEREFORE**, Plaintiff, Certa ProPainters, Ltd., demands that the Defendants be preliminarily and permanently enjoined and restrained from having any other interest in, or involvement in the operation of, any business whether for compensation or not, in any capacity whatsoever, which is directly or indirectly, in competition with Certa ProPainters, Ltd. or its affiliates, which business is located within ten (10) miles of the Territory or within a radius of five (5) miles of any Certa Pro franchised business.

## COUNT III – ACCOUNTING

67. Plaintiff incorporates by reference the averments set forth in paragraphs 1 through 66 above as though set forth at length herein.

68. Arcadian and Certa Pro entered into the Franchise Agreement, under which Arcadian and Rossi are required to pay Certa Pro a non-refundable monthly royalty fees on or before the fifth (5th) day following the end of each month for the term of the Franchise Agreement.

69. Pursuant to the Franchise Agreement, Arcadian and Rossi are also required to contribute to Certa Pro's national advertising fund.

70. Pursuant to Article 12.2.1 of the Franchise Agreement, Arcadian and Pratt are required to furnish Certa Pro such reports as it may require, which include weekly reports of gross sales, quarterly reports of gross sales, profit and loss statements, and year-end financial statements.

71. Pursuant to Article 12.3 of the Franchise Agreement, Arcadian and Pratt are required to allow Certa Pro to inspect or audit, or cause to be inspected or audited, the financial books, records, bookkeeping and accounting records, documents, and/or other materials in respect of the franchised business. Furthermore, Arcadian and Pratt are required to allow Certa Pro to examine and make copies of all accounting and business records and procedures.

72. Defendants have refused and continue to refuse Certa Pro's efforts to conduct an audit of the franchised business.

73. Since the purported termination date, Defendants have continued to operate the business and have failed to turn over to Certa Pro the royalty and national advertising fund amounts due under the Franchise Agreement.

74. Further, Defendants have failed to account to Certa Pro for the royalty and national advertising fund payments now due and owing.

75. The amount of Defendants' royalty and national advertising fund payments now due and owing is peculiarly in the knowledge of Defendants, and Certa Pro requires an accounting of the amount of said royalty and national advertising fund payments now due and owing.

76. Defendants' refusal to submit to an audit constitutes a material breach of the Franchise Agreement and the Guaranty.

**WHEREFORE**, Certa ProPainters, Ltd. respectfully requests that this Honorable Court issue a mandatory injunction compelling the Defendants to make available their financial books, records, bookkeeping and accounting records, documents and other materials with respect to the franchised business for examination and copying and such further relief as this Court deems appropriate.

**FISHER ZUCKER, LLC**

By: _____
Lane Fisher, Esquire
PA Attorney ID No. 57199
121 South Broad Street, Suite 1200
Philadelphia, Pennsylvania 19107
(215)545-5200
Attorneys for Plaintiff
Certa ProPainters, Ltd.

Date: October 21, 2004