IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CERTA PROPAINTERS, LTD.** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| **RALPH E. ROSSI**, individually, | : | Case No. 04-CV-4950 |
| **ARCADIAN PAINTING**, and **PRATT** | : | |
| **& D'ANGELO PAINTING, INC.** | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATION OF F. JOSEPH DUNN, ESQUIRE

I, F. Joseph Dunn, of full age hereby certifies and states as follows:

1.      I am licensed to practice law in the Commonwealth of Pennsylvania and in the United States District Court for the Eastern District of Pennsylvania. I am an associate in the law firm of Fisher Zucker LLC, attorneys for the plaintiff. I am personally familiar with the facts contained in this Certification.

2.      The instant action was filed on October 21, 2004 and asserted claims against the defendants for (1) an injunction to enjoin the operation of a competing business; and (2) an accounting.

3.      Thereafter, on October 25, 2004, plaintiff filed a Motion for Preliminary Injunction seeking to enjoin the operation of the defendants' competing business.

4.      The hearing on the plaintiff's Motion for Preliminary Injunction was scheduled for May 5, 2005.

5. At that time, the parties engaged in extensive settlement negotiations, and with the Court's assistance, were able to reach an agreement.

6. The material terms of the settlement were set forth in a writing that day and initialed by all of the parties and counsel before the Court. A true and correct copy of the material terms of the agreement are attached hereto as Exhibit "A".

7. The material terms of the settlement included the defendants' transfer to plaintiff of the telephone number 914-835-6240 (the "Telephone Number") and the payment of $34,000 within thirty days.

8. The parties intended that the material terms contained in the writing be put into a more formal form of settlement agreement.

9. Accordingly, I drafted a formal settlement agreement (the "Settlement Agreement") and it was forwarded to the defendants' counsel on May 13, 2005. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "B".

10. Counsel for the plaintiff followed up as to the status of the Settlement Agreement with defendants' counsel on June 5, 2005. A true and correct copy of the June 5, 2005 e-mail is attached hereto as Exhibit "C".

11. On June 8, 2005, the defendants' counsel indicated that he had forwarded the Settlement Agreement to his client and that the matter should be concluded in about a week. In addition, defendants' counsel indicated that the Telephone Number could be transferred immediately. A true and correct copy of the June 8, 2005 e-mail is attached hereto as Exhibit "D".

12.    Thereafter, when arranging for the transfer of the Telephone Number, the plaintiff learned that the defendant would transfer the Telephone Number only at the plaintiff's expense.

13.    When the Settlement Agreement and payment was not forthcoming, I followed up with counsel for the defendants in order to ascertain the status of the Settlement Agreement and was informed that I would receive it and the payment shortly.

14.    As late as last week, defendants' counsel informed me that I would receive the executed Settlement Agreement and payment no later than Monday or Tuesday of this week, and that there would be no problem with transferring the Telephone Number.

15.    Again, the defendants have failed to forward me the Settlement Agreement and payment as promised.

16.    To date, the defendants have failed and refused to execute the Settlement Agreement, to transfer the Telephone Number and to pay the sum of $34,000.

17.    Accordingly, the plaintiff requests that this Court open the case in order to enforce the terms of the Settlement Agreement.

I certify under penalty of perjury that the foregoing is true and correct.


Executed on:  August 3, 2005                    /s/ F. Joseph Dunn
                                                F. Joseph Dunn, Esquire (FJD 2053)
                                                FISHER ZUCKER LLC
                                                121 South Broad Street, Suite 1200
                                                Philadelphia, PA 19107
                                                (215) 545-5200

**EXHIBIT "A"**

Demands:                                                          Joseph
                                                                      Sunn

① Ø Residential Painting in 8 zips for 18 mos.

~~② Years~~

~~③ 10% AR.~~

~~21   Lost Royalty~~

~~25   his.~~

~~30%.~~

④ Telephone Number   914-835-6240                    (MD)

~~⑤ Return All materials~~

⑥ no lawn signs or other advertising for interior & exterior painting "3/4"

⑦ painting incidental to other contracting project is ok, subject
          to appropriate scripting and no "workarounds"

⑧ arbitration clause with carve out for injunctive relief

⑨ prevailing party attorneys fees  (reasonable)

~~⑩ Telephone number assigned ASAP~~

⑪ return of proprietary materials & manuals

⑫ non derogatory ~~state~~ statements

⑬ I way confidentiality - Ralph can't disclose terms of settlement

⑭ cancel all internet listings identified in package, ~~script~~
          as identified by Certa.

⑮ Rossi pays Certa $34,000 w/i 30 days

⑯ mutual general releases

⑰ Rossi will say favorable things to prospects

⑱ Rossi will respond to inquires for Charlie Chase about
          whether and to what extent he is doing residential work in zips

EXHIBIT "B"

## Lane Fisher

**From:** Lane Fisher [lfisher@fisherzucker.com]
**Sent:** Friday, May 13, 2005 6:20 PM
**To:** Mario DeMarco (demarcomario3@aol.com)
**Subject:** Certa v. Rossi



Settlement
greement.doc (61 K

Mario,

Attached please find the proposed form of settlement agreement memorializing our agreement before Judge Davis.  Please contact Joe or I after your review to discuss any comments that you might have.

Lane Fisher, Esquire
Fisher Zucker LLC
121 Avenue of the Arts, Suite 1200
Philadelphia, PA 19107
215-545-5200 (p)
215-545-8313 (f)
lfisher@fisherzucker.com
www.fisherzucker.com
www.franchise-law-firm.com

The information contained in this electronic mail transmission is confidential and privileged and may be subject to the attorney-client or work product privileges. It is intended only for the use of the individual or entity to whom it is addressed. If you have received this communication in error, please notify us immediately by telephone collect, purge any copies of the transmission stored in any electronic medium, and return any printed copies of the original message to us at the above address via the U.S. Postal Service. We will reimburse you for the postage.
Thank you.

1

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CERTA PROPAINTERS, LTD.** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| **RALPH E. ROSSI**, individually, | : | Case No. 04-CV-4950 |
| **ARCADIAN PAINTING**, and **PRATT** | : | |
| **& D'ANGELO PAINTING, INC.** | : | |
| | : | |
| Defendants. | : | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made this _____ day of May 2005, by

and between Certa ProPainters, Ltd. ("Certa"), a Massachusetts corporation with its principal

place of business located at 150 Green Tree Road, Suite 1003, Oaks, Pennsylvania, Ralph E.

Rossi ("Rossi"), an individual with an address of 83 Old Well Road, Purchase, New York,

Arcadian Painting ("Arcadian"), a New York corporation with an address of 83 Old Well Road,

Purchase, New York, and Pratt & D'Angelo Painting, Inc. a New York corporation with an

address of 83 Old Well Road, Purchase, New York.  Rossi, Arcadian and Pratt & D'Angelo are

hereinafter at times collectively referred to as Defendants.

## BACKGROUND

A.      Certa is the franchisor of Certa ProPainting franchises which offer painting,

decorating and related services.

B.      On or about June 24, 1997 Certa and Arcadian entered into a Certa franchise agreement pursuant to which Arcadian was permitted to operate a Certa franchise in a certain designated territory in New York for a term of 10 years (the "Franchise Agreement").

C.      Contemporaneously, Rossi executed a personal guaranty pursuant to which he personally guaranteed the performance of Arcadian's obligations under the Franchise Agreement.

D.      Rossi formed Pratt & D'Angelo on or about January 21, 2003.

E.      By letter dated May 9, 2003, Rossi notified Certa that Arcadian was exercising its right to terminate the Franchise Agreement.

F.      A dispute arose as to Rossi's and Arcadian's rights and obligations pursuant to the post-termination provisions of the Franchise Agreement.

G.      On or about October 21, 2004, Certa filed a lawsuit against Rossi, Arcadian and Pratt & D'Angelo in the United States District Court for the Eastern District of Pennsylvania under the name and style <u>Certa ProPainters, Ltd. v. Ralph E. Rossi, Arcadian Painting and Pratt & D'Angelo Painting, Inc., No. 04-CV-4950</u> (the "Litigation").

H.      The parties to this Agreement desire to amicably resolve and settle their dispute and the Litigation.

## <u>AGREEMENT</u>

**NOW THEREFORE**, the parties, intending to be mutually bound, for and in consideration of the mutual promises contained herein, hereby agree as follows:

1.      **Payment.**  Defendants shall pay Certa the sum of $34,000 on or before June 5, 2005.

2.      **Phone Number.**  Defendants shall take all steps to immediately assign the telephone number 914-835-6240 to Certa and shall execute all documents reasonably required to effectuate the assignment of the telephone number.

3.      **De-Identification.**  Defendants shall take immediate steps to cancel all internet listings in which the defendants are listed as a Certa franchisee including but not limited to: (1) Americantradesman.com; and (2) the New York Harrison Painting Contractors Directory.

4.      **Proprietary Materials.**  Defendants agree to return to Certa within 10-days of the date of this Agreement any and all of Certa's proprietary and confidential information which is in their possession including but not limited to Certa's Methods and Operations Manual.

5.      **Warranty Work.**  Defendants agree to perform, at their own cost and expense, any warranty work required for work performed while a Certa franchisee. Defendant.  Defendants further agree to notify Certa of any warranty claims made for work performed while a Certa franchisee within 10-days of the claim.

6.      **Confidentiality.**  The Defendants shall maintain the confidentiality of this Agreement and shall not disclose the terms of this Agreement to any person or persons except their professional advisors for legitimate business purposes, or otherwise as required by law.  Certa shall be free to accurately disclose the terms of this Agreement.

7.      **Non-Disparagement.**   The parties agree that they shall refrain from making any untrue or derogatory statements concerning one another and their present and

3

former officers, employees, shareholders, directors, agents, attorneys, servants, franchisees, representatives, successors and assigns.

8.      **Representations to Franchise Prospects.**  Rossi agrees to make favorable statements about Certa and the Certa franchise system upon inquiry by any prospective franchisee of Certa.

9.      **Communication between Parties.**  Rossi agrees to respond to inquiries from Charlie Chase of Certa as to whether and to what extent the Defendants are performing residential interior and exterior painting within the Territory.

10.     **Restrictive Covenants.**

10.1     **Restriction.**  Defendants agree that for a continuous uninterrupted period commencing upon the date of this Agreement and continuing eighteen (18) months thereafter the Defendants shall not, directly or indirectly, for themselves or on behalf of any other person or entity, solicit or accept business within the Territory, as defined below, for interior and/or exterior residential painting.  The parties acknowledge that the Defendants may continue to provide general contracting services within the Territory and that the Defendants may perform residential painting services that are ancillary to such general contracting services.

10.2     **Territory.**  The Territory is defined as the following geographic zip codes: 10583, 10543, 10538, 10528, 10580, 10573 and 10577.

10.3     **Inquiries.**  Upon any inquiry from a customer or prospective customer via telephone, e-mail or other means, for interior and/or exterior residential painting, the Defendants shall first inquire as to the location of where the work is to be performed.  If the work is to be performed within the Territory, the Defendants shall

4

inform the customer that they are unable to provide such services.  The defendants agree to follow the script attached hereto as Appendix "A".

    10.4   **Advertising.**  The Defendants shall not use lawn signs or other advertising, which states or otherwise advertises for residential interior or exterior painting within the Territory.

    10.5   **Remedies.**  Defendants understand and acknowledge that a violation of this Article 10 would result in irreparable injury to Certa for which no adequate remedy at law may be available.  Notwithstanding Section 13 below, in the event of a breach or threatened breach of any of the covenants herein contained, Certa, in addition to any rights, remedies or damages otherwise available, shall be entitled to obtain permanent injunctive relief restraining Defendants, their partners, agents, representatives, employees and any and all other persons directly or indirectly acting for Defendants, from continuing to breach the covenants contained in the Article 4.

    10.6   **Reasonableness of Restrictions.**

    10.6.1  Defendants acknowledges that the restrictive covenants contained in this Article 10 are essential elements of this Agreement and that absent their inclusion, Certa would not have entered into this Agreement.  Defendants agree that each of the terms set forth herein, including the restrictive covenants, are fair and reasonable both separately and in the aggregate and are reasonable required for the protection of the interests of Certa and its franchisees.

    10.6.2  The geographic scope and period of time of the aforesaid restrictive covenants shall be those provided for in this Article 9.  In the event however, that a court of competent jurisdiction determines that the aforesaid restricted covenants,

5

given such scope and time, are unenforceable, the scope and time shall be read to extend only over the maximum period of time, geographic area, or range of activities which such court deems enforceable.

      10.7  **Severability.**  In the event that any clause or portion of any such covenant should be unenforceable or be declared invalid for any reason whatsoever, such unenforceability or invalidity shall not affect the enforceability or validity of the remaining portions of the restrictive covenants contained in this Agreement and such unenforceable, or invalid portions shall be severable from this Agreement, which shall otherwise continue in full force and effect.

      11.  **Certa's Release of Rossi, Arcadian and Pratt & D'Angelo.**  Upon payment of the sum set forth in Paragraph 1 above, and except for claims arising out this Agreement, Certa, for itself, and all persons and entities claiming by, through or under it, releases, acquits and forever discharges Rossi, Arcadian and Pratt & D'Angelo, their heirs, executors, administrators, officers, employees, shareholders, directors, agents, servants, representatives, affiliates, successors and assigns of and from all, and all manner of, actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity as set forth more particularly in the Litigation that they ever had and now have, for, or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date of these presents. Certa warrants and represents that it has not assigned or otherwise transferred any claim or cause of action released by this Agreement.

      12.  **Rossi's, Arcardian's and Pratt & D'Angelo's Release of Certa.**  Upon execution of this Agreement, Rossi, Arcadian and Pratt & D'Angelo, for themselves and

all persons and entities claiming by, through or under them, release, acquit and forever discharge Certa, its present and former officers, employees, shareholders, directors, agents, servants, representatives, affiliates, successors and assigns of and from all, and all manner of, actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, claims and demands whatsoever in law or equity as set forth more particularly in the Litigation that they ever had and now have, for, or by reason of any cause, matter or thing whatsoever, from the beginning of the world to the date of these presents. Rossi, Arcadian and Pratt & D'Angelo warrant and represent that they have not assigned or otherwise transferred any claim or cause of action released by this Agreement.

13. **Arbitration.** All disputes and claims relating to this Agreement, the rights and obligations of the parties, or any other claims or causes of action relating to the making, interpretation, or performance of either party under this Agreement, shall be settled by arbitration before a single neutral arbitrator in Philadelphia, Pennsylvania in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The rights and duties of the parties to this Agreement to resolve any disputes by arbitration shall be governed by the Federal Arbitration Act, as amended.

The arbitrator's award shall be rendered within 7 days of the close of the hearing and shall include all fees, costs and attorneys' fees for the prevailing party. The arbitrators shall have no authority to amend or modify the terms of the Agreement. To the extent permitted by applicable law, no issue of fact or law shall be given preclusive or collateral estoppel effect in any arbitration, except to the extent such issue may have been

7

determined in another proceeding between the parties. Judgment upon the award of the arbitrator shall be submitted for confirmation to the United States District for the Eastern District of Pennsylvania and, if confirmed, may be subsequently entered in any court having competent jurisdiction.

14.  **Time of the Essence.**  Time is of the essence with respect to all obligations contained in this Agreement.

15.  **No Admission Of Liability.**  Nothing in this Agreement shall constitute an admission of liability by any party hereto.

16.  **Notices.**  Service of any notice or payment pursuant to this Agreement shall be deemed effective as of the date of mailing, plus three (3) days, if service is made by Certified Mail, Return Receipt Requested.  Notwithstanding, the parties agree that a notice of default may be served via telecopier in which case service shall be deemed effective upon successful transmission of the notice by telecopier.

| | |
|---|---|
| If to Certa: | Charlie Chase, President<br>Certa ProPainters, Ltd.<br>150 Green Tree Road, Suite 1003<br>Oaks, PA 19456 |
| With a copy to: | Lane Fisher, Esquire<br>Fisher & Zucker, LLC<br>121 South Broad Street, Suite 1200<br>Philadelphia, PA 19107<br>Fax: (215) 545-8313 |
| If to Rossi, Arcadian or<br>Pratt & D'Angelo: | Ralph Rossi<br>83 Old Well Road<br>Purchase, NY 10577 |
| With a copy to: | Mario DeMarco, Esquire<br>8 South Main Street<br>Port Chester, NY 10573<br>Fax: (914) 937-3066 |

17.    **Advice of Counsel.**  Each party declares that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by each party, after having a reasonable opportunity to retain and confer with counsel.  This Agreement is entered into after a full investigation by the parties, and the parties are not relying upon any statements or representations not embodied in this Agreement.

18.    **Binding Agreement.**  This Agreement shall be for the benefit of and binding upon the parties and their respective representatives, executors and heirs.

19.    **Integrated Agreement.**  This Agreement constitutes the entire integrated Agreement of the parties and shall not be subject to change, modification, amendment or addition without the express written consent of all parties to this Agreement.

20.    **Attorneys' Fees and Costs.**  In the event that any party institutes legal action against any other party to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from nonprevailing party all costs and expenses, including reasonable attorneys' fees, actually incurred in connection with such action.

21.    **Counterparts.**  This Agreement may be executed in two or more counterparts, and the failure to have the signatures of all parties in a single Agreement shall not affect the validity or enforceability of any part of this Agreement against any party who executes any counterpart of the Agreement.

*THE NEXT PAGE IS THE SIGNATURE PAGE*

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered on the day and year first above written.

ATTEST:                                    **CERTA PROPAINTERS, LTD.**


_____      By:    _____
                                                Charles E. Chase, President

ATTEST:                                    **ARCADIAN PAINTING**


_____      By:    _____
                                                Ralph Rossi, President


ATTEST:                                    **PRATT & D'ANGELO
                                                PAINTING, INC.**


_____      By:    _____
                                                Ralph Rossi, President


WITNESS:


_____      By:    _____
                                                Ralph Rossi, Individually

10

## APPENDIX A

Upon inquiry from a customer or prospective customer via telephone, e-mail or other means,

1.　For interior and/or exterior residential painting, the Defendants shall:

    a.　First inquire as to the location where the work is to be performed;

    b.　If the work is to be performed within the Territory, as defined in Section 9.2 of the Agreement, then the Defendants shall inform the customer that they are unable to provide such services;

    c.　If the work is to be performed outside the Territory, the Defendants are free to accept such work.

2.　For general contracting services, the Defendants may accept such work regardless of the location where the work is to be performed.

3.　For general contracting services as well as interior and/or exterior painting, the Defendants shall:

    a.　First inquire as to the location where the work is to be performed;

    b.　If the work is to be performed,

        i.　Within the Territory, as defined in Section 9.2 of the Agreement, then the Defendants may inquire as to whether the painting services are directly related to, and required as a result of, the general contracting services, for example, painting of a wall to be installed, or whether the painting services are indirectly related to the general contracting work, for example, painting of another room in which no contracting work is to be performed.

            1.　If the painting services are directly related to the general contracting services, then the Defendants may accept such residential painting work.

            2.　If the painting services are not directly related to the general contracting services, then the Defendants shall inform the customer that they are unable to provide the unrelated painting services but may provide the general contracting services.

        ii.      Outside the Territory, the Defendants are free to accept such work.

**EXHIBIT "C"**

## Lane Fisher

**From:**    Lane Fisher [lfisher@fisherzucker.com]

**Sent:**    Sunday, June 05, 2005 5:48 PM

**To:**    'Demarcomario@aol.com'

**Subject:** CertaPro v. Rossi

Mario:

It has been 30-days since our settlement of the above referenced matter before Judge Davis. Your client's payment to CertaPro was due within 30-days, i.e. today. Also the telephone number was to be immediately transferred. When can I expect payment and the telephone transfer as well as the signed Settlement Agreement which memorialized the settlement reached before Judge Davis. Thanks.

Lane Fisher, Esquire

**FisherZucker**

Fisher Zucker LLC
121 South Broad Street, Suite 1200
Philadelphia, Pennsylvania 19107
P.: 215-545-5200
F.: 215-545-8313
lfisher@fisherzucker.com
www.fisherzucker.com

The information contained in this electronic mail transmission is confidential and privileged and may be subject to the attorney-client or work product privileges. It is intended only for the use of the individual or entity to whom it is addressed. If you have received this communication in error, please notify us immediately by telephone collect, purge any copies of the transmission stored in any electronic medium, and return any printed copies of the original message to us at the above address by mail. We will reimburse you for the postage. Thank you.

**EXHIBIT "D"**

## Lane Fisher

**From:** Demarcomario@aol.com
**Sent:** Wednesday, June 08, 2005 9:55 AM
**To:** lfisher@fisherzucker.com
**Subject:** Re: CertaPro v. Rossi

Dear Lane:

Thank you for your e-mail of June 5, 2005. My client is reviewing the agreement and gathering funds. The move has put quite a strain on him. The telephone number may be transferred immediately. Your client can contact the phone company to effectuate the transfer. My client will cooperate with whatever needs to be done. Payment and the Stipulation shall follow shortly. I would not expect more than one week is needed. Thank you for your patience to date.

Mario DeMarco, Esq.